UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**IN ADMIRALTY**

IN THE MATTER OF:

CASE NO.: 1:20-cv-24046-DLG

THE COMPLAINT OF TERRY ANDREWS AS OWNER OF THE M/Y *13 BUTTONS*, 1990 VIKING YACHT, HIN VKY44352K990 AND REG. NO. 960735 for EXONERATION FROM OR LIMITATION OF LIABILITY,

Petitioner.
_______________________________________/

**PETITIONER'S MOTION TO STRIKE EXPERT STEWART HUTCHESON PURSUANT TO F.R.E. 702 AND *DAUBERT***

Pursuant to Federal Rule of Civil Procedure 702 and this Court's Scheduling Order, Petitioner TERRY ANDREWS AS OWNER OF THE M/Y 13 BUTTONS ("Andrews") hereby moves this Court for an order striking or limiting the testimony of Claimants' expert, Stewart Hutcheson, because (a) his opinions are based on speculation and conjecture, not reliable scientific methodology, and (b) his conclusions go to ultimate issues and invade the province of the trier of fact. In support thereof states as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

This is a subrogation matter arising out of a fire that occurred at Crandon Marina in Miami, Florida on May 7, 2020. The fire originated on Petitioner's vessel, the 13 BUTTONS, somewhere in the area of the electrical panel. The fire completely destroyed the 13 BUTTONS, and damaged several other vessels in the vicinity,

including each of the three claimant vessels. Petitioner initiated this action seeking exoneration, or alternatively, limitation of liability pursuant to 46 U.S.C. § 30501 *et seq*.

Two of the claimants, Everest National a/s/o 2016 37' GRADY WHITE ("EVEREST NATIONAL"), and Great Lakes Ins. SE a/s/o 1986 40' Island Gypsy KON TIKI ("GREAT LAKES") timely served and adopted the expert report of marine surveyor, Stewart Hutcheson.[1] Paragraphs eight (8) through sixteen (16) of Hutcheson's report are dedicated to explaining that the fire originated aboard 13 BUTTONS, on the starboard stern corner, and the prevailing winds drew the flame and radiant heat to KON TIKI and the GRADY WHITE, insured by both claimants. These issues are not in dispute. What Hutcheson attempts to dispute are Petitioner's expert conclusions that the cause of the fire is "Undetermined."

Hutcheson offers the following opinions in his report:

- The cause of the fire was due to the vessel's unseaworthiness at the time of the blaze. The unseaworthiness is directly attributable to the vessel's owner Mr. Andrews. Given my 30 years of professional experience and training, an unattended vessel secured at a sheltered dock in benign conditions should not catch fire if it is in a seaworthy condition.

- In making my determination above, I considered any and all other potential causes and ruled them out.

- The absence of evidence to support other causes reinforces the conclusion that cause of the fire was the unseaworthiness of M/Y 13 BUTTONS.

---

[1] Two of the three Claimants rely exclusively on the inadmissible expert opinion of a marine surveyor- Everest National a/s/o 2016 37' GRADY WHITE, and Great Lakes Ins. SE a/s/o 1986 40' Island Gypsy KON TIKI. The third claim, GEICO Marine a/s/o 2019 48' DAD'S TOY, failed to serve any expert disclosures and has *no* evidence of causation.



HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Hutcheson's opinions are based on the following so-called "methodology":

- I conducted an analysis of the fire event of May 7, 2020 with scene and vessel inspections, which took place on May 19, 2020 at the Crandon Park Marina where the subject loss occurred; *Ex.* A., ¶7.

- I supplemented my scene investigation with research on prevailing wind and weather conditions as of the time of the subject fire and considered third party reports and video captured of the fire, including the Petitioner's answers to interrogatories, the report of the Miami-Dade County fire investigator, and social media video footage depicting the fire and involved vessels; *Id.*

- I also reviewed and considered a 2018 vessel survey of M/Y 13 Buttons conducted by Randall Boiko; *Id.*

- Lastly, I applied my 30 years of experience in vessel surveys and casualty investigations. *Id.*

However, Hutcheson also states in his Report that **"destruction by fire and the extended submersion in salt water …precluded further investigation with regard to causation aboard the M/V 13 BUTTONS."** *Id.* at ¶17.

In contrast, ANDREWS disclosed the opinions of its experts, Dennis Kerr and James Cote. Mr. Kerr is a certified fire investigator who "utilizes National Fire Protection Association (NFPA) 921, Guide for Fire and Explosion Investigations, and NFPA 1033, Standard for Professional Qualifications for the Fire Investigator, and American Boat & Yacht Council (ABYC) Standards." *See* Ex. B., Kerr Report, p. 3. Mr. Cote is fire investigator and marine electrical expert retained to investigate the electrical system as the specific cause of the fire, who also utilizes the methodology of NFPA 921. *See* Ex. C., Cote Report, p. 1.

Mr. Kerr and Mr. Cote's opinions are based, in part, upon an inspection of 13 BUTTONS on June 24, 2010 *after it was raised from the water and on the hard.*



HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**Hutcheson was not present at this inspection and has not conducted <u>any</u> physical inspection of the exterior or interior of 13 BUTTONS.** *See Ex.* B at p. 7; *Ex. C.* at p. 8, ¶2, *Ex. A,* p. 3 (showing the only inspection of 13 BUTTONS by Hutcheson was while it was fully submerged under water at the marina).

It was from this physical inspection that the experts who were present, including Kerr and Cote, concluded that:

> Excavation of the fire debris revealed the AC/DC electrical panel was located near midship. The electrical panel, circuit breakers and wiring sustained significant fire damage. This area is the heaviest fire damage found on this vessel. This is the origin area of the fire. The likely cause of this fire was an electrical failure, however, **due to the extensive fire damage an exact fire cause could not be determined.**

The "Undetermined" classification of the fire comports squarely with NFPA 921, as stated in Kerr's report.

> **NFPA 921 – 2017 Edition - 19.6.5.1 Cause Undetermined**. In the circumstance where all hypothesized fire causes have been eliminated and the investigator is left with no hypothesis that is evidenced by the facts of the investigation, the only choice for the investigator is to conclude that the fire cause, or specific causal factors, remains undetermined. It is improper to base hypotheses on the absence of any supportive evidence. *That is, it is improper to opine a specific fire cause, ignition source, fuel or cause classification that has no evidence to support it even though all other such hypothesized elements were eliminated.*

> **NFPA 921 – 2021 Edition - 19.6.5.1 Cause Undetermined**. In circumstances where all hypotheses have been rejected, or if two or more hypotheses cannot be rejected, the only choice for the investigator is to conclude that the fire cause, or specific causal factors, is undetermined. It is improper to base hypotheses on the absence of any supportive evidence. *That is, it is improper to opine a specific fire cause, ignition source, or fuel that has no evidence to support it even though all other such hypothesized elements were eliminated.*



HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Additionally, Cote concluded that (a) the cause of the fire is undetermined; (b) the severity and extent of the heat and fire damage to the electrical panel components and wiring coupled with water intrusion and corrosion damage from the fire-fighting efforts prevent the determination of the cause of the fire to within a reasonable degree of scientific certainty; and (c) There are multiple fire cause hypothesis scenarios that cannot be reasonably disproven or eliminated. *Ex.* C at p. 12.

In contrast to Kerr and Cote, Hutcheson's opinions are inadmissible because they are based on pure speculation, conjecture, and unsupported assumptions. There is no analysis, testing, or even inspection of the physical evidence- in short, there is no methodology underlying Hutcheson's opinion, much less one that is reliable. His opinions are nothing more than improper *ipse dixit.* Further, he opines solely on ultimate issues of law, namely that the vessel was unseaworthy and that the unseaworthy condition was the fault of ANDREWS. This invades the province of the trier of fact and is improper. Hutcheson should be stricken under F.R.E. 702.

## MEMORANDUM OF LAW

### I. The admissibility of expert testimony.

The district court serves as a gatekeeper to the admission of scientific testimony, by ensuring that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 589 (1993);



HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005); *quoting McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

The admissibility of expert testimony is governed by Rule 702 of Federal Rules of Evidence, which provides: if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient fact or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see also Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 302 (11th Cir. 2009).

In determining the admissibility of expert evidence, the court engages in a rigorous three-part inquiry pursuant to *Daubert* and its progeny. Relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *see also Daubert*, 509 U.S. at 589. The Eleventh Circuit has referred to these requirements as the "qualification", "reliability", and "helpfulness" prongs, and although there may inevitably be

overlap, the three prongs remain distinct concepts that must be individually analyzed. *Frazier*, 387 F.3d at 1260.

"[W]hen a party offers expert testimony and the opposing party raises a *Daubert* challenge, the trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 143 L.Ed. 2d 238, 119 S.Ct. 1167 (1999)). It is Claimants' burden, as the proponent of opinion testimony from Hutcheson, to show that his opinions are reliable and helpful to the trier of fact. *Frazier*, 387 F.3d at 1260.

**II. Hutcheson's opinions are speculative and not based upon any reliable scientific methodology.**

Hutcheson concedes in this Report that the extent of fire and water damage to 13 BUTTONS made it impossible to identify the cause of the fire. Further, Hutcheson was not even present for the June 24, 2020 physical inspection of 13 BUTTONS after it was raised from the bottom and the area of origin (the actual physical evidence) was excavated and analyzed.

Regarding the reliability factor, a trial court "must focus on the soundness of the expert's methodology." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir.), cert. denied, 522 U.S. 817, 118 S. Ct. 67, 139 L. Ed. 2d 29 (1997). "An expert opinion that is based on scientifically valid principles will satisfy Fed. R. Evid. 702; an expert's subjective belief or unsupported speculation will not."

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, (on Remand), 43 F.3d 1311, 1319 (9th Cir.) cert. denied, 516 U.S. 869, 116 S. Ct. 189, 133 L.Ed2d 126 (1995).

NFPA-921 is a recognized guide for assessing the reliability of expert testimony in fire investigations. *See Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 849-50 (N.D. Ohio 2004)(cause and origin expert stricken for failing to comport with NFPA 921 investigative methods); *Royal Ins. Co. of Am. v. Joseph Daniel Constr. Co.*, 208 F. Supp.2d 423, 426-27 (S.D.N.Y. 2002); *Travelers Prop. & Cas. Corp. v. GE*, 150 F. Supp. 2d 360, 366 (D. Conn. 2001). NFPA-921 establishes that fire investigations should be follow the scientific method:

> **2-3 Relating Fire Investigation to the Scientific Method.** The scientific method . . . is a principal of inquiry that forms a basis for legitimate scientific and engineering processes, including fire incident investigation. The scientific method is applied using the following six steps.
>
> **2-3.1 Recognize the Need.** First, one should determine that a problem exists. In this case, a fire or explosion has occurred and the cause should be determined and listed so that future, similar incidents can be prevented.
>
> **2-3.2 Define the Problem**. Having determined that a problem exists, the investigator or analyst should define in what manner the problem can be solved. In this case, a proper origin and cause investigation should be conducted. This is done by an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing.
>
> **2-3.3 Collect Data.** Facts about the fire incident are now collected. This is done by observation, experiment, or other direct data gathering means. This is called empirical data because it is based on observation or experience and is capable of being verified.



HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

> **2-3.4 Analyze the Data (Inductive Reasoning).** All of the collected and observed information is analyzed by inductive reasoning. This is the process in which the total body of empirical data collected is carefully examined in the light of the investigator's knowledge, training and experience. Subjective or speculative information cannot be included in the analysis, only facts that can be clearly proven by observation or experiment.
>
> **2-3.5 Develop a Hypothesis.** Based on the data analysis, the investigator should now produce a hypothesis or group of hypotheses to explain the origin and cause of the fire or explosion incident. This hypothesis should be based solely on the empirical data that the investigator has collected.
>
> **2-3.6 Test the Hypothesis (Deductive Reasoning).** All other reasonable origins and causes should be eliminated. The investigator does not have a truly provable hypothesis unless it can stand the test of careful and serious challenge. This is done by the process of deductive reasoning, in which the investigator compares his or her hypothesis to all known facts. If the hypothesis cannot withstand an examination by deductive reasoning, it should be discarded as not provable and a new hypothesis tested. This may include the collection of new data or reanalysis of existing data. This process needs to be continued until all feasible hypotheses have been tested. Otherwise the fire cause should be listed as "undetermined."

Hutcheson's opinions are clearly not based upon NFPA 921 specifically nor the scientific method generally. By his own admission he did not inspect any of the electrical system physical evidence that was extracted from the remains of 13 BUTTONS; was not present at that inspection; and agrees that the evidence was too damaged from the incident to allow for a cause to be determined. Therefore, none of his hypotheses regarding the cause of the fire (which he does not detail) are testable nor did Hutcheson examine the evidence by deductive reasoning. Hutcheson admits on the one hand that the damaged evidence precludes determination of a cause; then on the other hand contradicts this and opines that

the fire was caused by an unspecific unseaworthy condition. This self-contradiction in and of itself exemplifies why he should be stricken.

Fire causation cannot be based on expert speculation and conjecture. "Courts asked to accept expert speculation on the cause of a fire aboard a ship based on sketchy circumstantial evidence have resisted the temptation" and instead held that the cause of the fire was not proven. *Westinghouse Elec. Corp. v. M/V "Leslie Lykes*", 734 F.2d 199, 214 (5th Cir. 1984), *citing Fidelity-Phenix Fire Ins. Co. v. Flota Mercante Del Estado*, 205 F.2d 886 (5th Cir.1953); *Rooney v. Nuta*, 267 F.2d 142 (5th Cir.1959) (clear error in speculative finding of cause of vessel fire in non-cargo limitation of liability proceeding); *American Tobacco Co. v. The Katingo Hadjipatera*, 194 F.2d 449, 451 (2d Cir.1951) (reversing conjectural finding of cause of fire "based not on facts on which a witness testified orally, but only on secondary or derivative inference from the fact which the judge directly inferred from such testimony.").

A similar situation was presented in *Michigan Millers Mutual Insurance Corp. v. Benfield*, 140 F.3d 915 (11th Cir. 1998), where the opinion of an expert was disallowed on the issue of the fire's origin. There, the expert opined that the cause of the fire was intentional "as all accidental causes were eliminated and he could not identify the ignition source." *Id.* at 921. The Court determined that "[e]ssentially, the testimony of Buckley reveals that he came to his opinion that the fire was incendiary largely because he was unable to identify the source of the ignition of the



HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

fire. In determining that the fire was incendiary, Buckley performed no tests and took no samples." *Id.*

The Eleventh Circuit held that there was no abuse of discretion in the exclusion of the expert's testimony because "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Benfield, citing General Elec. Co. v. Joiner*, 118 S. Ct. 512, 519 (1997); *see also State Farm Fire & Case. Co. v. Holmes Prods.,* 165 Fed. Appx. 182 (3d Cir. 2006)(expert exclusion proper where expert opinion based on speculative theories not support by analysis or methodology that homeowner's dog must have pushed lamp over bringing it into contact with draperies); *Cook v. Sunbeam Prods.,* 365 F. Supp. 2d 1189 (N.D. Ala. 2005)(fire cause and origin expert's opinion that other products manufactured by defendant are defective and therefore the electric blanket used by plaintiff must have also been defective and caused fire properly excluded for lack of reliable method resulting in confusion and unfair prejudice); *Weisgram v. Marley Co.,* 169 F.3d 514, 519 (8th Cir. 1999)(fire investigator did not have "free rein to speculate…as to the cause of fire by relying upon inferences that had absolutely no record support."); *McCoy v. Whirlpool Corp.,* 379 F. Supp. 2d 11857, 1201 (D. Kan. 2005)(expert opinion on cause of manufacturing defect excluded because he could not identify what defect in the wiring system caused the fire and he speculated that *if* the fire originated in the door latch switch area the fire was from a defect in the system).

### III. Hutcheson's conclusion that the fire was due to unseaworthiness invades the province of the jury.

Hutcheson concludes mysteriously that just because the fire occurred, the unspecified cause of the fire *must have been* due to an unseaworthy condition, which in turn *must have been* a condition that was the fault of ANDREWS. Questions of unseaworthiness and fault are legal issues which are solely the province of the trier of fact. It is improper for Hutcheson to opine on those issues and in turn, unhelpful to the Court as the trier of fact.

"A vessel is unseaworthy if the vessel and its appurtenances are not reasonably fit for their intended use." *Wolf v. McCulley Marine Servs*., 2012 U.S. Dist. LEXIS 132107, at *15 (M.D. Fla. Sep. 17, 2012)(internal citations omitted). The determination of whether a vessel is unseaworthy or not is for the trier of fact. *See e.g.* Eleventh Circuit Pattern Civil Jury Instructions 8.1 Jones Act- Negligence and Unseaworthiness- General Instruction ("So if you find that the vessel was unsafe or unfit in any manner and that the condition was a legal cause of [name of plaintiff]'s damage, then you can find that the vessel was unseaworthy…"). Hutcheson has made a conclusion about an ultimate issue- that the fire was caused by an unseaworthy condition which in turn was the fault of ANDREWS. But he fails to opine as to how the vessel's electrical system in or around the electrical panel "was unsafe or unfit in any manner" or how such condition was the legal cause of the fire.

Expert testimony is not permitted if it usurps the role of the trier of fact in applying that law to the facts before it. *See Ryken v. Celebrity Cruises, Inc.,* 2019

U.S. Dist. LEXIS 186502, at *18 (S.D. Fla. Sep. 10, 2019)(expert opinion that plaintiff did nothing to contribute to her accident is an impermissible legal conclusion); *Higgs v. Costa Crociere S.p.A.* 2016 U.S. Dist. LEXIS 187916, 2016 WL 4370012, at *7 (S.D. Fla. Jan. 12, 2016) (excluding expert testimony that the defendant is at fault or that its crew was 'careless'); *Farley v. Oceania Cruises, Inc.*, 2015 U.S. Dist. LEXIS 30576, at *9 (S.D. Fla. Mar. 12, 2015)(striking the expert witness and noting that some of his opinions are inadmissible because they invade the province of the jury). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.' " *Gastaldi v. Sunvest Resort Communities, LC*, 709 F.Supp.2d 1299, 1305 (S.D. Fla. 2010). Based on the above, Hutcheson should be stricken because his opinions are unhelpful to the trier of fact as they are opinions on the ultimate issues and invade the province of the trier of fact.

**Conclusion**

Petitioner TERRY ANDREWS AS OWNER OF THE M/Y 13 BUTTONS ("Andrews") hereby moves this Court for an order striking or limiting the testimony of Claimants' expert, Stewart Hutcheson, because (a) his opinions are based on speculation and conjecture, not reliable scientific methodology, and (b) his conclusions go to ultimate issues and invade the province of the trier of fact.



HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Respectfully submitted,

/s/ *Krista Fowler Acuña*

Krista Fowler Acuña, Esq.
Florida Bar No. 650791
Elisha M. Sullivan, Esq.
Florida Bar No. 57559
HAMILTON, MILLER BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
kacuna@hamiltonmillerlaw.com
esullivan@hamiltonmillerlaw.com
jmartin@hamiltonmillerlaw.com
P: 305-379-3686 / F: 305-379-3690
*Counsel for Petitioner, Terry Andrews as owner of M/Y 13 BUTTONS in rem*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **August 20, 2021**, the foregoing document is being filed with this Court and served on all counsel of record or *pro se* parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Krista Fowler Acuña*

Krista Fowler Acuña, Esq.

**SERVICE LIST**

Andrew Spector, Esq.
Robert Borak, Esq.
Spector Rubin, P.A.
Continental Plaza
3250 Mary Street, Suite 405
Miami, FL 33133
andrew.spector@spectorrubin.com
robert.borak@spectorrubin.com
***Counsel for Claimants, Dad's Toy, LLC and Geico Marine Insurance Company, a/s/o of Dad's Toy, LLC***

J. Michael Pennekamp, Esq.
Christine M. Walker, Esq.
Christopher B. Smith, Esq.
Fowler White Burnett, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
jmp@fowler-white.com
cwalker@fowler-white.com
csmith@fowler-white.com
***Counsel for Respondent/Claimant, Smooth Waters Consultants & Adjusters o/b/o Everest National Insurance Company a/s/o Carlos Sabater, owner of a 2016 37' Grady White***

Charles S. Davant, Esq.
Patrick J. Ryan, Esq.
Davant Law, P.A.
12 Southeast 7th Street, Suite 601
Fort Lauderdale, FL 33301
csd@davantlaw.com
pjr@davantlaw.com
***Counsel for Claimants, Michael Hyman, and Great Lakes Insurance SE, a/s/o Michael Hyman and his Vessel***

Krista Fowler Acuña
Elisha M. Sullivan
Hamilton, Miller & Birthisel, LLP
150 Southeast Second Avenue
Suite 1200
Miami, Florida 33131-2332
***Counsel for Petitioner, Terry Andrews as owner of M/Y 13 Buttons in rem***